

# OFFICE OF
# THE ATTORNEY GENERAL
## AUSTIN, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

November 24, 1947

Hon. C. S. Harris          Opinion No. V-440
Acting County Attorney
Borden County             Re:  Authority of a com-
Gail, Texas                    missioners' court to
                               reject a petition to
                               create a road dis-
                               trict and a bond elec-
                               tion therefor.

Dear Sir:

        Your letter of October 23, 1947, requested
the opinion of this Department on the following ques-
tion:

        "If 50 or more qualified tax paying
    voters have signed a petition requesting
    the Commissioners' Court to set aside a
    Commissioner's Precinct as a Special Road
    District at the same time requesting the
    Court to order an election for the purpose
    of voting on a bond issue for the purpose
    of building a hard surface road, and said
    petition has been presented to said Court
    and a hearing has been held in which six
    people protested against the petition,can
    the Court reject setting aside the road
    district and also refuse to order the elec-
    tion if they feel that it is not the thing
    to do.  Or is it possible for the voters to
    hold the election if the Court is not will-
    ing to order it?"

        This question raises three distinct issues:

        1.  The power of the commissioners' court to
set aside a special road district.

        2.  The power of that court to call a bond
election.

        3.  The power of the citizens to call and con-
duct an election on their own motion and initiative.

Hon. C. S. Harris - Page 2  (V-440)

Art. III, Sec. 52, Constitution of Texas, pro-
vides that the Legislature may authorize the issuance
of road bonds by any of the following entities:

1. County
2. Political subdivision of a county
(Art. 752a, V.C.S. defines a sub-
division of a county as any commis-
sioners' precinct or any justice
precinct)
3. Any number of adjoining counties
4. Any political subdivision of the
State
5. Any defined district

Art. 752a, V C.S. the enabling act for Sec. 52,
Art. III, Constitution of Texas, provides as follows:

"Any county, or any political subdivi-
sion of a county, or any road district that
has been or may hereafter be created by any
general or special law, is hereby authorized
to issue bonds for the purpose of the con-
struction, maintenance and operation of mac-
adamized, graveled or paved roads and turn-
pikes, or in aid thereof, in any amount not
to exceed one-fourth of the assessed valua-
tion of the real property of such county or
political subdivision or road district, and
to levy and collect ad valorem taxes to pay
the interest on such bonds and provide a
sinking fund for the redemption thereof.
Such bonds shall be issued in the manner
hereinafter provided, and as contemplated
and authorized by Section 52, of Article 3,
of the Constitution of this State. The term
'political subdivision,' as used in this Act,
shall be construed to mean any commissioners
precinct or any justice precinct of a county,
now or hereafter to be created and establish-
ed."

With reference to the formation of road dis-
tricts, Art. 752c, V.C.S. provides, in part, that:

"The County Commissioners' Courts of the
several counties of this State may hereafter
establish one or more road districts in their
respective counties, and may or may not include

within the boundaries and limits of such
districts, villages, towns and municipal
corporations, or any portion thereof, and
may or may not include previously created
road districts and political subdivisions
or precincts that have voted and issued
road bonds pursuant to Section 52 of Arti-
cle 3 of the Constitution, by entering an
order declaring such road district estab-
lished and defining the boundaries thereof.
. . ."

In the case of King v. Falls County, 42 S. W.
(2d) 481, the Waco Court of Civil Appeals, speaking
through Justice Alexander, now Chief Justice of the Su-
preme Court of Texas, referred to Art. 752c as follows:

"The statute, Article 752c, . . . au-
thorized the Commissioners' Court to create
a road district of its own motion, and does
not require that any previous notice be giv-
en to the taxpayers, nor that evidence be
heard as to the advisability of creating the
same. The statute does not contemplate that
the taxpayer shall be heard at the time the
district is created. His right to be heard
accrues later when the petition is presented
to the Court calling for the bond election."

A commissioners' court is vested with power to
create road districts in a county under Art. 752c, V.C.S.,
without respect whatsoever to other existing political
subdivisions of the county. (Attorney General's Opinion
No. 0-3493)

Formation of a road district by a commissioners'
court lies within the discretion of the court and the
court is under no duty to conduct a hearing on a petition
to form such district.

The provision in Article 752d, quoted below,
for a petition of 50 taxpayers, is applicable to the ques-
tion of the issuance of the bonds and not to the creation
of the district. While the petition of taxpayers for the
creation of a district would be persuasive with the commis-
sioners, the filing of such petition has no binding effect
on the action of the court.

With reference to the issuance of bonds, Art. 752d, V.C.S., reads, in part as follows:

"Where any political subdivision, or any road district, desires to issue bonds, there shall be presented to the Commissioners' Court of the county in which such subdivision or district is situated, a petition signed by fifty or a majority of the resident property taxpaying voters of said subdivision or road district praying such court to order an election to determine whether or not the bonds of such subdivision or district shall be issued to an amount stated for the purpose of the construction, maintenance and operation of macadamized, graveled or paved roads and turnpikes, or in aid thereof, and whether or not taxes shall be levied on all taxable property within said subdivision or district in payment thereof. Upon presentation of such petition, it shall be the duty of the court to which it is presented to fix a time and place at which such petition shall be heard, which date shall be not less than fifteen nor more than thirty days from the date of the order. The clerk of said court shall forthwith issue a notice of such time and place of hearing, which notice shall inform all persons concerned of the time and place of hearing and of their right to appear at such hearing and contend for or protest the ordering of such bond election. . . ."

Art. 752e, V.C.S., provides, in part, that:

"At the time and place set for the hearing of the petition, or such subsequent date as may then be fixed, the court shall proceed to hear such petition and all matters in respect of the proposed bond election. Any person interested may appear before the court in person or by attorney and contend for or protest the calling of such proposed bond election. Such a hearing may be adjourned from day to day and from time to time, as the court may deem necessary. If upon the hearing of such petition, it be found that the same is signed by fifty or a majority of the resident property tax paying voters of such subdivision or road district, and that due notice has been given, and that the proposed improvements

> would be for the benefit of all taxable pro-
> perty situated in such sub-division or road
> district, then such court may make and cause
> to be entered of record upon its minutes an
> order directing that an election be held with-
> in and for such subdivision or road district
> at a date to be fixed in the order, for the
> purpose of determining the questions mentioned
> in such petitions; provided, however, that such
> court may change the amount of the bonds propos-
> ed to be issued, if, upon the hearing such
> change be found necessary or desirable. . . ."

In King v. Falls County, supra, Art. 752e is re-
ferred to as follows:

> "This statute (Art. 752e) requires the com-
> missioners' court, before ordering such an elec-
> tion, to make a finding that it would be for the
> benefit of all taxable property in the district.
> . . . We therefore have before us a case where
> the law requires the Commissioners' Court, before
> ordering a bond election, to judicially determine
> that the issuance of the bonds would be for the
> benefit of all taxable property in the district,
> and yet, under the allegations in this case, the
> court has not judicially determined such issue,
> but has arbitrarily and wrongfully entered such
> an order contrary to the facts. . . .

> "Our Constitution, Article 5, Section 8,
> gives the district court supervisory control
> over the commissioners' court. . . . Where a mat-
> ter has been committed to the discretion of the
> commissioners' court and acted on by it, its
> judgment becomes the judgment of a court of compe-
> tent jurisdiction, and a district court is not
> authorized to review the discretion of the commis-
> sioners' court, nor to set aside such judgment,
> unless it appears that there has been a clear abuse
> of the discretion of the court, or, unless there
> appears to be collusion, fraud, or bad faith. . . ."

Hence if the Commissioners' Court finds that the
improvements would not be for the benefit of all taxable
property, its judgment will not be disturbed on appeal un-
less it is made to appear that there was an abuse of dis-
cretion, fraud, collusion, or bad faith. If in their honest
judgment and discretion the commissioners' court thinks the

subdivision proposing the bond election would not bene-
fit by it, then they may refuse to order an election; and
any election conducted on the initiative of the voters
themselves would be of no force and effect as the Legis-
lature has created the procedure for road bond elections
and it must be followed in all respects. Where there has
been an authority granted to a political subdivision to
create indebtedness the statutes are to be followed strict-
ly.

Therefore, we are of the opinion that the Com-
missioners' Court of Borden County is under no duty to set
aside or create a commissioners' precinct as a special
road district upon presentation of a petition signed by
fifty or more qualified taxpaying voters. The Commission-
ers' Court must make an affirmative finding that the pro-
posed improvements within a road district or political
subdivision would be for the benefit of all taxable prop-
erty situated therein prior to ordering a road bond elec-
tion as required by Article 752e, Vernon's Civil Statutes.
Where the commissioners' court fails or refuses to order a
road bond election any election conducted by the voters
themselves on a bond issue would be invalid as a strict
compliance with statutory procedure for creating bonded in-
debtedness is required.

### SUMMARY

Creation of a road district for road bond
purposes by a commissioners' court lies with-
in the discretion of the court. A finding by
a commissioners' court that the proposed im-
provements would be for the benefit of all
taxable property situated within the road dis-
trict or political subdivision petitioning for
a road bond election is necessary prior to
ordering the election. Where a commissioners'
court fails or refuses to order a road bond
election within a district or subdivision, an
election conducted by the voters would be in-
valid.

Yours very truly

ATTORNEY GENERAL OF TEXAS

APPROVED:

(Acting) ATTORNEY GENERAL

By

James T. Bryan
Assistant

JTB/lh